IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARLENE M. HOLCOMB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-863 |
| | ) | Judge Lancaster |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

Gary L. Lancaster,
District Judge                                August 13, 2008

## I. Introduction

Plaintiff Arlene M. Holcomb ("Holcomb") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433 and 1381-1383(f)]. For the reasons that follow, the Court will vacate the decision of the Commissioner and remand this case for further administrative proceedings.

## II. Background

Holcomb is a female who was born on April 14, 1957. (R. at 330). She obtained a General Educational Development ("GED")

1

diploma and continued on to college. *Id.* Nevertheless, she abandoned her collegiate studies without obtaining a degree. *Id.* At the time of the administrative decision currently under review, Holcomb was forty-nine years old.

Holcomb protectively filed applications for DIB and SSI on August 8, 2005, alleging disability as of January 23, 2004. (R. at 48, 63). The claims were initially denied on September 26, 2005. (R. at 30). Holcomb filed a timely request for an administrative hearing on October 14, 2005. (R. at 38). On December 20, 2006, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge Kenneth Andrews ("ALJ"). (R. at 326). Holcomb, who was represented by counsel, appeared and testified at the hearing. (R. at 328-348). Karen Krull ("Krull"), an impartial vocational expert, was present for the entire hearing and testified before its conclusion. (R. at 346-348). In a decision dated January 26, 2007, the ALJ determined that Holcomb was not "disabled" under the Act and, hence, was not entitled to DIB and SSI. (R. at 11-21). The Appeals Council denied Holcomb's request for review on April 28, 2007, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 6).

This action was commenced on July 3, 2007. (Doc. No. 3). Holcomb and the Commissioner filed motions for summary judgment on October 26, 2007, and December 11, 2007, respectively. (Doc.

Nos. 8 & 12). These motions are currently pending before the Court and, hence, are the subject of this memorandum opinion.

### III. Standard of Review

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 108 S.Ct. 2541, 2545 (1988). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an

impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To support his ultimate findings, the Commissioner must do more than simply state factual conclusions. He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). An administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently

summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted). Hence, as a general matter, a claimant seeking benefits under the Act may establish the existence of a statutory disability by (1) introducing medical evidence that she is *per se* disabled as a result of an impairment appearing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of Impairments") or (2) demonstrating that the functional limitations caused by her impairments effectively preclude her from returning to her past relevant work and from

5

performing other jobs existing in significant numbers in the national economy. *Stunkard*, 849 F.2d at 59.

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corporation*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corporation*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

**IV. Discussion**

In his opinion, the ALJ noted that Holcomb had not engaged

6

in substantial gainful activity since her alleged onset of disability. (R. at 16). Moving on to the second step of the sequential evaluation process, the ALJ found Holcomb to be suffering from diabetes mellitus, left shoulder pain, obesity, urinary frequency, carpal tunnel syndrome, hypertension, unconfirmed fibromyalgia, moderate sleep apnea and irritable bowel syndrome. *Id.* Holcomb's diabetes mellitus, left shoulder pain, obesity and urinary frequency were deemed to be "severe" for purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii) and 416.920(c). *Id.* Her carpal tunnel syndrome, hypertension, unconfirmed fibromyalgia, moderate sleep apnea and irritable bowel syndrome were found to be "non-severe." *Id.* The ALJ concluded that these impairments did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. (R. at 17). In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ made the following determination with respect to Holcomb's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform a range of sedentary exertional activities in that the claimant is able to: lift and carry up to 20 pounds occasionally and 10 pounds frequently; occasionally stoop, kneel, balance, climb, crawl and crouch; sit up to 6 hours in an 8-hour workday; and stand and walk up to 2 hours in an 8-hour workday. The claimant is unable to repetitively use her left arm above the shoulder level, must avoid cold weather, moving machinery and unprotected heights.

7

(R. at 17). Given this assessment, the ALJ concluded that Holcomb could return to her past relevant work as a pharmacy technician. (R. at 20). Thus, she was not found to be "disabled" under the Act.

In support of her motion for summary judgment, Holcomb makes three basic arguments. First, she contends that the ALJ erred in rejecting the opinion of Dr. Robert C. Knapp, who had opined that she was totally disabled. (Doc. No. 9 at 5-10). Second, she argues that the ALJ erred in rejecting her testimony concerning the effects that her impairments had on her ability to work. (*Id.* at 10-14). Third, she asserts that the ALJ erred in failing to seek clarification from Krull concerning a conflict between her testimony and the Dictionary of Occupational Titles ("DOT"). (*Id.* at 14-15). Since these issues all center around Holcomb's residual functional capacity, and whether it permits her to return to her past relevant work as a pharmacy technician, the Court will address them together. There are some inconsistencies in the ALJ's findings that warrant further examination on remand.

It is undeniable that Holcomb suffers from a number of impairments. The extent to which such *impairments* result in *limitations* is what determines whether a claimant such as Holcomb is statutorily disabled. "Residual functional capacity is defined as that which an individual is still able to do despite the *limitations* caused by his or her *impairments*." *Pearson v.*

*Barnhart*, 380 F.Supp.2d 496, 505 (D.N.J. 2005)(emphasis added). In determining a claimant's residual functional capacity, the Commissioner is required to account for all functional limitations that are credibly established in the record. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). In this case, the Court is troubled by the ALJ's apparent failure to adequately account for Holcomb's urological and irritable bowel impairments.

In a letter dated December 14, 2006, Dr. Knapp opined that Holcomb was totally disabled. (R. at 303). In that letter, he asserted that Holcomb "suffers from spastic bladder syndrome, which forces her to go to the bathroom to void every hour." *Id*. The existence of her urological impairment is amply supported by the record. In 2004, Dr. Pamela Dumpe reported that Holcomb was urinating on an hourly basis. (R. at 219). Because of her urological problems, Holcomb was a regular patient of Dr. Michael Lustbader, a urologist. (R. at 252-260). Holcomb underwent a pelvic sonogram on May 21, 2004, which revealed that she had a post-void residual of greater than fifty percent. (R. at 133). She apparently had difficulty emptying her bladder, which required her to make frequent trips to the bathroom.

Holcomb's alleged onset date is January 23, 2004. This date coincides with her last day of work as a pharmacy technician. (R. at 331). She had worked as a pharmacy technician for at

least six years. (R. at 330). At the hearing, Holcomb testified that she had been discharged by her employer because of excessive absences. (R. at 331). According to her, these absences had been necessitated, in part, by her need to make frequent trips to the bathroom. *Id.* In addition to urinary problems, Holcomb was suffering from irritable bowel syndrome. *Id.* The existence of her irritable bowel syndrome is also supported by the medical evidence contained in the record. On January 3, 2005, Dr. Dumpe reported that Holcomb had been experiencing "rectal urgency," but that she had been unable to move her bowels for several hours after going to the bathroom. (R. at 212).

In his opinion, the ALJ found Holcomb's irritable bowel syndrome to be "non-severe." (R. at 16). This determination is at odds with Dr. Dumpe's treatment notes, which appear to indicate that Holcomb's inability to work was due, at least in part, to her irritable bowel syndrome. (R. at 211). Nevertheless, the ALJ concluded that Holcomb's "urinary frequency" constituted a "severe" impairment. (R. at 16). A "severe" impairment is one which is sufficient to meet a claimant's burden at the second step of the sequential evaluation process. The second step is generally viewed as "a *de minimis* screening device to dispose of groundless claims." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 549 (3d Cir. 2003). To surmount this hurdle, a claimant need only demonstrate

that he or she suffers from something more than a "slight abnormality" (or a combination of slight abnormalities) which has no more than a minimal effect on his or her ability to work. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360 (3d Cir. 2004). In this context, the word "severe" should not be construed in accordance with its typical meaning. The purpose of the second step of the sequential evaluation process is to dispose of claims in which a claimant fails to make a "reasonable threshold showing" that his or her impairment is "one which could conceivably keep him or her from working." *McDonald v. Secretary of Health and Human Services*, 795 F.2d 1118, 1122 (1st Cir. 1986).

The Court is unsure as to why the ALJ found Holcomb's irritable bowel syndrome to be "non-severe" despite the existence of evidence suggesting that it was a major factor behind her discharge. Nonetheless, the Court notes that Holcomb's *claims* were not denied at the second step of the process. Because the ALJ concluded that Holcomb suffered from several "severe" impairments, this case proceeded to the third and fourth steps. (R. at 16-20). The Court acknowledges that "because step two is to be rarely utilized as a basis for the denial of benefits, its invocation is certain to raise a judicial eyebrow" when it is employed for *that* purpose. *McCrea*, 370 F.3d at 361 (internal citations omitted). Where a claim proceeds past the second step

11

because of the existence of other impairments, however, an erroneous determination as to a particular impairment may be inconsequential. *Newell*, 347 F.3d at 546 ("If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and *the sequential evaluation process should continue*.")(emphasis added). Nevertheless, the Commissioner's residual functional capacity assessment must still account for *all* of the claimant's impairments, including those which are found to be "non-severe." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In this case, the Court is not convinced that the Commissioner has properly accounted for all of Holcomb's credibly established impairments (and resulting limitations).

The legislative mandate at issue is clearly expressed in the Act. Both Titles II and XVI provide:

> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). Despite this mandate from Congress, the ALJ appears to have considered Holcomb's

urinary frequency only in isolation. He found this impairment to be "severe." (R. at 16). Nevertheless, his assessment of Holcomb's residual functional capacity does not account for any limitations resulting from this impairment. (R. at 17). Irrespective of whether a remand would be independently required because of the ALJ's failure to consider the impact of Holcomb's irritable bowel syndrome on her ability to work, it is clear that a remand is required because of his failure to incorporate her urinary frequency (which he found to be a "severe" impairment) into his assessment of her residual functional capacity.

At the hearing, Krull answered three different hypothetical questions posed by the ALJ. The exchange occurred as follows:

> Q. Ms. Krall, kindly describe the work as a pharmacy technician.
>
> A. Certainly, Your Honor. That job would be considered sedentary as performed, and semi-skilled. And the DOT, Your Honor, it's light and semi-skilled.
>
> Q. Now I'd like to pose hypotheticals to you. For the first hypothetical, assume an individual of the Claimant's age, education level, and past work experience who has the following limitations. The maximum lifting is 20 pounds, repeated maximum lifting is ten pounds, stand, sit, and walk each six hours out of an eight-hour day. However, this individual should only occasionally stoop, kneel, crawl, crouch, balance, and climb, and should not be required to do repetitive reaching involving the left arm. Could this individual return to the prior relevant work?
>
> A. Yes, Your Honor.
>
> Q. Now for the second hypothetical individual, we

13

> have the same individual. All the limitations
> given in the first hypothetical continue to apply,
> but there are additional limitations. Here,
> standing is reduced to two hours out of an eight-
> hour day, and walking is reduced to two hours out
> of an eight-hour day. In addition to the
> repetitive reaching with the left arm, there
> should never be any work involving the left arm at
> or above the shoulder level. As well, the
> individual should avoid working in cold or wet
> environments, in the presence of moving machinery
> or at unprotected heights. Could this individual
> return to the prior relevant work?
>
> A. As performed, yes, Your Honor.
>
> Q. Now for the third hypothetical, and, again, all of
> the limitations given in the first two
> hypotheticals continue to apply. But, again,
> there are additional limitations. Standing
> remains at two hours out of an eight-hour day, can
> be performed 15 minutes per occurrence. Walking
> is at two hours out of an eight-hour day, to be
> performed roughly 40 yards or one block per
> occurrence. The individual requires bathroom
> breaks approximately on an hourly basis. The
> individual needs to elevate the legs as in a
> recliner, six to eight times per day,
> approximately 30 minutes per occurrence. The
> individual may miss up to four days of work per
> month. Could this individual return to the prior
> relevant work?
>
> A. No. Nor any employment, any jobs, Your Honor.

(R. at 347-348). As this exchange illustrates, the *only* hypothetical question that accounted for Holcomb's urinary frequency was the third question, which led Krull to respond that the hypothetical individual described therein could not sustain gainful employment. Although Holcomb's urinary frequency was credibly established in the record (which is evinced by the ALJ's

14

determination that it was a "severe" impairment), it was not reflected in the ultimate residual functional capacity determination. A residual functional capacity assessment is defective if it fails to account for *all* of the claimant's limitations. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). Consequently, the Commissioner's ultimate determination in this case is not "supported by substantial evidence" for purposes of § 405(g).

Holcomb also takes issue with the ALJ's failure to ask Krull about the discrepancy between her description of Holcomb's job duties as a pharmacy technician and the generic description of the duties for similar jobs contained in the DOT. (Doc. No. 9 at 14-15). The Commissioner refutes her argument with a contention that there was nothing that truly needed clarification. (Doc. No. 13 at 13-15). It is clear from Krull's testimony that Holcomb's particular pharmacy technician job had been a *sedentary* job even though most pharmacy technician jobs (as described in the DOT) were *light* jobs. (R. at 347). At the fourth step, the Commissioner can lawfully find a claimant to be capable of performing his or her past relevant work upon a showing that the claimant can perform such work as he or she had actually performed it, even if the duties of similar jobs in the national economy are not compatible with the claimant's residual functional capacity. *Rivera v. Barnhart*, 239 F.Supp.2d 413, 419-

15

420 (D.Del. 2002). Nevertheless, in this case, the ALJ determined that Holcomb was capable of performing her past relevant work "as *actually* and *generally* performed." (R. at 20)(emphasis added). It is not clear how the ALJ concluded that Holcomb was capable of performing the duties of a pharmacy technician job as *generally* performed, since he determined that she was capable of only *sedentary* work. (R. at 17). Krull testified that such jobs were described in the DOT as *light* jobs, which would be beyond Holcomb's residual functional capacity as assessed by the ALJ. If this were the only error in the ALJ's analysis, the Commissioner's decision could be sustained on the alternative ground that Krull's testimony had established that Holcomb's pharmacy technician duties, as *actually* performed, were only sedentary. Since a remand is required for other reasons, however, the Commissioner will have an opportunity to correct this mistake.

Holcomb argues that she is entitled to an award of benefits at this stage. (Doc. No. 9 at 15). A judicially ordered award of benefits is proper only where "the administrative record of the case has been fully developed and . . . substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 222 (3d Cir. 1984). That standard is not met here. The mere fact that Dr. Knapp has opined that Holcomb is disabled does not

16

mean that Holcomb is entitled to an award of benefits. A statement by a treating physician that a claimant is "disabled" or "unable to work" is certainly not dispositive of the issue. *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990). The record in this case is not fully developed. The Court is convinced that the Commissioner must account for Holcomb's urinary frequency in assessing her residual functional capacity. It does not follow, however, that this limitation will tip the balance in favor of a finding of disability. At the hearing, the only hypothetical question posed by the ALJ which mentioned "bathroom breaks" as a limitation also included limitations such as four absences per month and six to eight 30-minute reclining accommodations per day. (R. at 348). The ALJ never incorporated Holcomb's need for "bathroom breaks" into a hypothetical question which did not include these additional limitations. It should come as no surprise that these other limitations would preclude a claimant from securing gainful employment. Moreover, because the ALJ determined that Holcomb could return to her previous job (which was the same job from which she had been *discharged* precisely *because* of her limitations), he never inquired as to whether there were other jobs in the national economy which were compatible with her limitations. Because these unanswered questions remain, the proper remedy is for the Court to remand this case for further administrative proceedings. *Stevens v.*

17

*Commissioner of Social Security*, 484 F.Supp.2d 662, 668-669 (E.D.Mich. 2007)("When the reason for the rejection of the ALJ's decision is a lack of substantial evidence, and the record indicates that remand to potentially find such evidence would not be futile, remand to the body assigned the role of weighing evidence and making factual determinations is appropriate.").

Accordingly, the Court must deny Holcomb's motion for summary judgment insofar as it seeks an award of benefits, grant Holcomb's motion for summary judgment insofar as it seeks a vacation of the Commissioner's administrative decision, and a remand for further proceedings, and deny the Commissioner's motion for summary judgment. On remand, it is the Commissioner's prerogative to proceed as he sees fit. In any event, however, the Court would suggest that he consider whether a consultative examination of Holcomb would be helpful for the purpose of assessing her residual functional capacity. Courts have often recognized that the opinions of disinterested consulting physicians can be helpful in determining whether the opinions of a claimant's treating physicians should be credited. *Smith v. Bowen*, 664 F.Supp. 1165, 1169 (N.D.Ill. 1987). The fact that no consultative examination has thus far been conducted in this case serves to further illustrate why further development of the record would be helpful. Based on the present state of the record, the Commissioner's decision cannot stand.

AND NOW, this 13th day of August, 2008, IT IS HEREBY ORDERED that Holcomb's motion for summary judgment (Doc. No. 8) is DENIED insofar as it seeks an award of benefits and GRANTED insofar as it seeks a vacation of the Commissioner's decision, and a remand for further administrative proceedings, and that the Commissioner's motion for summary judgment (Doc. No. 12) is DENIED. Pursuant to the authority vested in this Court by the fourth sentence of § 405(g), the decision of the Commissioner is hereby vacated, and the case is remanded to him for further proceedings consistent with this opinion.

BY THE COURT:

/s/ Gary L. Lancaster
Gary L. Lancaster
United States District Judge

cc: All Counsel of Record